UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANDRE JENNINGS,

        Plaintiff,

        v.

BRENDA THOMPSON,

        Defendant.

Civil Action No. 09-00790 (BAH)

## **MEMORANDUM OPINION ON MOTIONS *IN LIMINE***

The plaintiff Andre Jennings has sued the defendant Brenda Thompson for negligence, following the plaintiff's fall, on September 1, 2008, from a balcony at premises owned by the defendant and leased to a tenant named Lolita Bobbitt. The trial in this matter is scheduled for April 25, 2011, and the Court now considers two motions *in limine* filed by the plaintiff to exclude reference to alleged tenant misconduct and to exclude the testimony of a defense medical expert.

## I.    BACKGROUND

The defendant purchased a townhouse, on June 14, 2006, at 702 Ridge Road, SE, Washington, D.C. (the "premises"), which is where the incident that prompted this lawsuit occurred. Joint Pre-Trial Statement ("JPS"), ECF No. 20, ¶ 3, Pl. a. She leased those premises to her niece, Lolita Bobbitt, and Bobbitt's four children from about August 1, 2006 until March, 2009, under a D.C. Housing Assistance Payment ("HAP") contract sponsored by the U.S. Department of Housing and Urban Development ("HUD"). *Id.* ¶ 3, Pl. b; Pl.'s Mot. In Limine to Exclude Reference to Alleged Tenant Misconduct, ECF No. 12 ("Tenant Excl. Mot.") at 1-2.

At the time of the incident at issue in this lawsuit, Bobbitt was the tenant at the premises

and the plaintiff was her guest for a Labor Day cookout. Tenant Excl. Mot. at 2. In the afternoon of Monday, September 1, 2008, while at the premises, the plaintiff lowered a trash bag to the backyard below the second floor rear balcony. *Id.* As he did so, the balcony's metal railing broke free and plaintiff fell to the ground approximately ten feet below. *Id.* The plaintiff suffered multiple fractures to his left wrist that required surgery, and he claims to be left with a permanent and painful injury that requires additional surgery. *Id.*

Approximately one month before the incident, on August 5, 2008, a D.C. Building Inspector had inspected the premises and found, *inter alia*, that the handrail for the balcony at the rear of the premises was not secure. JPS ¶ 3, Pl. f. There appears to be no dispute that the defendant received a notice from the inspector regarding his findings on about August 8, 2008. *See id.* ¶ 3, Pl. g; Def. b; Def.'s Opp. to Pl.'s Mot. Exclude Reference to Alleged Tenant Misconduct, ECF No. 16 ("Tenant Excl. Opp.") ¶ 2. The defendant claims that she hired a contractor to repair the balcony handrail prior to plaintiff's fall and expected the repair work to be completed by September 3, 2008. JPS ¶ 3, Def. c, d, f, h.

Plaintiff claims that the defendant was negligent in allowing a dangerous condition to exist for an unreasonable period of time, without providing a warning of the danger, and that this negligence was the proximate cause of his fall and the permanent and painful injury for which he has required treatment and will require future surgery, resulting in medical expenses estimated to be $56,917.61. JPS ¶ 3, Pl. m-q. The defendant denies that she was negligent, although she admits that she hired a contractor, Mitchell Samuel, to repair the property, which was scheduled for re-inspection on about September 3, 2008. *Id.* ¶ 3, Def. c, h. The defendant claims that the plaintiff voluntarily assumed the risk of injury, was contributorily negligent, and has exaggerated his injury for which "the medical treatment was neither [sic] fair, reasonable,

necessary, nor causally related." *Id*. ¶ 3, Def. k-m.

## II. PENDING MOTIONS *IN LIMINE*

The plaintiff has filed two pending motions *in limine* to exclude evidence at trial. These motions will be addressed seriatim below.[1]

### A. PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE REFERENCE TO ALLEGED TENANT MISCONDUCT

The plaintiff seeks to exclude "any alleged tenant-misconduct evidence" and any reference to the "maintenance of the interior of the premises" by Lolita Bobbitt, the defendant's tenant at the time of the incident, as either irrelevant under Rule 402 of the Federal Rules of Evidence, or prejudicial under Rule 403, or both. Tenant Excl. Mot. at 11-12. According to the plaintiff, the defendant apparently "intends to pursue a prejudicial 'tenant misconduct' defense instead of accepting responsibility for her failure to correct the defective balcony railing that caused the Plaintiff's injury." *Id.* at 1. Although the specific evidence that the plaintiff seeks to exclude is not altogether clear, he apparently contends the following evidence about the non-party tenant is excludable: (1) Bobbitt was a destructive tenant; (2) Bobbitt over-populated the premises in violation of the lease; (3) Bobbitt cursed offensively at the defendant; (4) Bobbitt changed the locks on the premises; and (5) incendiary evidence about Bobbitt, such as alcohol intoxication or drug abuse.[2] *Id.* at 2, 11-12. According to the plaintiff, the defendant can present

---

[1] The defendant also filed a motion *in limine* to exclude reference to or evidence of the cost of future surgery to the plaintiff's wrist on the basis that the plaintiff never raised the issue of future medical costs during discovery. *See* Def.'s Mot. In Limine to Exclude Any Mention or Evidence of the Cost of Future Surgery, ECF No. 14. The plaintiff's future costs of surgery, however, were squarely addressed in the report of the plaintiff's medical expert. *See* Plaintiff's Supplemental Rule 26(a)(2) Statement, ECF No. 8. Accordingly, the defendant withdrew the motion *in limine* at oral argument on April 15, 2011. The defendant had contended that the plaintiff had failed to supplement an earlier discovery response with information about the claims for future costs of surgery, but the duty to supplement applies where "the additional or corrective information has not otherwise been made known to the other parties during the discovery process . . . ." Fed. R. Civ. P. 26(e)*.*

[2] The plaintiff was also concerned about the potential introduction of evidence that Bobbitt allowed unsanitary conditions to develop in the apartment, including by allowing feces to collect on the basement floor, and that Bobbitt allowed guests to be present on the premises in a "half-naked condition," but defense counsel indicated at oral

3

no evidence that the tenant "caused the balcony railing to become unfastened" or "interfered with any repair of the railing." *Id.* at 10. Consequently, the plaintiff argues that evidence about alleged misconduct by Bobbitt has "no relevance to the length and time that the defective and dangerous railing went unrepaired resulting in injury to the Plaintiff" and should therefore be excluded. *Id.* at 1.

The defendant has outlined testimony that she may seek to offer at trial concerning interactions she had with her tenant and the tenant's family and guests.[3] Since the plaintiff's liability theory rests at least in part on allegations that "the defendant failed to timely arrange for repairs at the subject property," Tenant Excl. Opp. ¶ 2, the defendant contends that a "jury is entitled to hear the background of how the property was maintained by the tenant and her guests before and at the time of the incident." *Id.* ¶ 7. In addition, the defendant asserts that it is appropriate to introduce evidence about the tenant's activities that had the effect of denying the defendant access to the premises.

The Court agrees with the defendant that, in light of the plaintiff's theories underlying negligence liability in this case, the following evidence is relevant: the maintenance and condition of the balcony before the incident, the timing of when this area was identified as being damaged and needing repair, the persons who had control of the property, the defendant's prior

---

argument that the defendant will not introduce any evidence on these topics. Accordingly, evidence regarding these topics is deemed excluded by consent of the parties.

[3] *See* Tenant Excl. Opp. ¶ 5 ("Prior to the incident, the defendant had been denied access to the subject property by the tenant and by her guests. *Exhibit 1, Brenda Thompson Deposition, pgs. 42-43*. . . .The locks were in fact in changed before the incident. *Exhibit 1, pg. 43*. There were communication problems with the tenant, Ms. Bobbitt, who had a habit of 'hanging up' and providing little or no information when contacted by Brenda Thompson. *Exhibit 1, Thompson deposition, pgs. 71-72; 85, line 5-9*. Ms. Bobbitt never provided any information as to a supposed problem with the subject railing. Ms. Thompson further testified that she felt it was not safe to inspect the property. *Exhibit 1, pg. 60*. She had been threatened by the tenant, her children and unknown guests. She stated that, . . . I couldn't go over there anymore because they kept threatening to beat me up. . . .they would box me in, curse and say different things.' *Exhibit 1, pg. 99, line 4-16*. The actions of the tenants and of her guests were an intimidating factor which unquestionably affected Ms. Thompson's ability to inspect the property and are part of the background of the case.")

4

efforts to inspect the property and communicate with the tenant about the condition of the property, and the obstacles presented by the tenant to such efforts, including any problems the defendant experienced in performing inspections or repairs. Under District of Columbia law, a landlord has a duty to "exercise reasonable care to maintain rental premises in compliance with the housing code," including making appropriate repairs. *Childs v. Purll*, 882 A.2d 227, 235-36 (D.C. 2005) (internal quotation omitted). The factors mentioned above are relevant to whether the defendant exercised "reasonable care."[4]

At the same time, the Court finds that the number of people residing at the apartment, the tenant's general destructive behavior, and any alcohol or drug use by the tenant should generally be excluded under Fed R. Evid. 402 and 403. Unless the defendant can demonstrate that evidence regarding those matters is particularly relevant in context, those matters will be excluded because their relevance appears minimal and the danger of unfair prejudice by the evidence would substantially outweigh its probative value under Fed. R. Evid. 403.[5] *See, e.g.*, *Harless v. Boyle-Midway Division, American Home Products*, 594 F.2d 1051, 1058 (5th Cir. 1979) ("The court should have granted the motion in limine" excluding evidence of marijuana smoking where its relevance was "tenuous at most" to the issue before the court).

Accordingly, the plaintiff's motion *in limine* to exclude evidence of the alleged tenant misconduct is DENIED in part and GRANTED in part.

### B. PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE DEFENSE EXPERT WITNESS

The plaintiff seeks to exclude, under Federal Rule of Civil Procedure 37(c), the trial

---

[4] The plaintiff argues that it is irrelevant whether the tenant changed the locks at the premises because the balcony was accessible from the outside as well as from the internal living area. Despite this claim, the Court finds that the level of cooperation (or active interference) from the tenant remains relevant to the reasonableness of the landlord's actions.

[5] The Court notes that the evidence of the specific defects in maintenance of the premises reflected on the D.C. building inspector's report – the document which establishes the basis of the plaintiff's theory of liability – will not be excluded.

testimony of the defense expert witness, Robert O. Gordon, M.D., because Dr. Gordon has not disclosed (1) a complete list of cases in which he gave expert testimony both by deposition and at trial, or (2) his IRS 1099 records for the past two years that would reflect the revenues he currently is receiving as a defense medical expert. Pl.'s Mot. In Limine to Exclude Robert O. Gordon, M.D. as Defense Expert Witness, ECF No. 13 ("Expert Excl. Mot.") at 1-2. In addition, the plaintiff argues this defense medical expert witness should be excluded under Federal Rules of Evidence 104.1 and 702 because the expert used an inadequate methodology to form an opinion about the plaintiff's wrist injury. *Id*. The defendant explains that Dr. Gordon will be called for the limited purpose of testifying about his physical examination of the plaintiff and his opinion about "permanency." Def.'s Opp. to Pl.'s Mot. In Limine to Exclude Robert O. Gordon, M.D. as Defense Expert Witness, ECF 17 ("Expert Excl. Opp.") ¶ 10. For the reasons set forth below, the plaintiff's motion will be granted.

The background provided by the parties regarding Dr. Gordon's compliance with his expert disclosure obligations are summarized as follows. The scheduling order entered in this case on July 15, 2009, required that the defendant's Rule 26(a) Expert Statement be submitted by November 3, 2009, with all discovery completed by February 1, 2010. ECF No. 5. The deadline for completion of discovery was subsequently extended until November 15, 2010. *See* Minute Entry, dated October 8, 2010. Within the authorized time period for naming defense expert witnesses, the defendant, on October 29, 2009, named Dr. Gordon as her medical expert witness, pursuant to Federal Rule of Civil Procedure 26(a)(2). The defendant did not, however, submit at that time "a list of all other cases in which, during the previous

four years, the witness testified as an expert at trial or by deposition." Fed. R. Civ. P. 26(a)(2)(B)(v).

Dr. Gordon was deposed on November 16, 2010, one day after the court-ordered close of discovery. At this deposition, Dr. Gordon produced a handwritten "list of trials" prepared by his staff that covered only his trial testimony from 2005 to 2009, and did not include information about more recent trials or any expert deposition testimony. Expert Excl. Mot. at 7-8.[6] At the deposition, the plaintiff's counsel questioned Dr. Gordon about his list of trials, including asking him whether he kept a list of his prior expert deposition testimony, to which Dr. Gordon replied that he did not. *Id.*, Ex. 1., Gordon Dep. at 10:11-22. According to the plaintiff, "Dr. Gordon has a long history of refusing to provide the basic information necessary for effective cross-examination of his extensive history of interests in testifying for defendants," which is the same behavior that prompted another federal court to strike him as a witness.[7] *Id.* at 13-14.

The copy of Dr. Gordon's handwritten "trial list" provided by the plaintiff reveals that it indicates only months and years associated with certain individuals' names, and does not identify specific case names, docket numbers, or the courts in which the cases were pending in a manner that would comport with Rule 26's requirement to provide a list of "cases." *See Holloway v. Ameristar Casino St. Charles, Inc.*, No. 4:07 CV 218, 2009 WL 5169535, at *3 (E.D. Mo. 2009)

---

[6] Dr. Gordon also testified that he was unable to produce any IRS 1099 forms requested by the plaintiff because he did not keep these records. Plaintiff's counsel states that other lawyers have forced the release of Dr. Gordon's 1099s from the insurers who issued them to Dr. Gordon. Expert Excl. Mot. at 9. The import of this statement is unclear and it is uncertain whether plaintiff's counsel is suggesting that Dr. Gordon perjured himself in his deposition testimony by stating he did not keep these records. The defendant responds that Dr. Gordon's tax records provide only the total amount of income generated and do not segregate the sources, nor does he "possess or maintain in the regular course of his business 1099-tax forms." Expert Excl. Opp. ¶ 5. In any event, the Court need not reach this issue because Dr. Gordon's testimony will be excluded for the other grounds addressed in this opinion.

[7] Plaintiff's counsel states that Dr. Gordon was excluded, on January 22, 2002, as a defense medical expert for failing to maintain and produce records of his trial and deposition testimony and related billing, in *Pechova v. Kourkounakis*, Civil Action No. PJM 00-1477, United States District Court for the District of Maryland. Expert Excl. Mot. at 13-14.

(requiring list to include "the name of the court, the name of the parties, and the docket number, and [to] state whether the testimony was given during trial, or before trial."); *Coleman v. Dydula*, 190 F.R.D. 316, 318-19 (W.D.N.Y. 1999) (same).

The defendant concedes that the prior handwritten list did not comply with the expert disclosure requirements of Rule 26, but claims that "Dr. Gordon has now updated this List to provide cases through 2010-2011, and this updated List was faxed to plaintiff counsel on March 30, 2011…The totality of both Lists now provided to Plaintiff attorney a List of Trial Testimony from 2005-2011, as required under Rule 26(a)(2)(B)(v)." Expert Excl. Opp. ¶ 2. According to the plaintiff, however, the updated list still falls short and remains incomplete since it does "not disclose any cases in which he gave deposition testimony." Pl.'s Reply to Def.'s Opp. to Pl.'s Mot. to Exclude Robert O. Gordon, M.D. as Defense Expert Witness., ECF No. 22, at 4. Nor does the updated list identify any specific "cases" with identifying court information, as opposed to listing the names of individuals. Finally, the information reflected in Dr. Gordon's updated list was provided on March 30, 2011, long after the close of discovery, long after the expert's deposition, and indeed after the plaintiff had already filed this motion *in limine* in preparation for trial.

The purpose of these Rule 26 lists is to allow opposing counsel to review an expert's past testimony, *see Holloway*, 2009 WL 5169535, at *2, and, the purpose of the Rule 26 expert disclosures more generally "is to prevent unfair surprise at trial and to permit the opposing party . . . to depose the expert, and to prepare for depositions and cross-examination at trial." *Iacangelo v. Georgetown Univ.*, No. 05-2086, 2011 WL 13573, at *1 (D.D.C. Jan. 4, 2011). Rule 26 places the burden of providing the disclosures "squarely on the party who has retained the expert." *Id.*; *see also* 6 James Wm. Moore *et al.*, *Moore's Federal Practice*, § 26.23[2][b],

[ii] (3d ed. 2011) ("A party is not excused from producing a detailed and complete list of cases in which that party's expert has testified simply because the expert does not maintain such a list, or because such a list would be costly and difficult to compile . . ."). If a party fails to follow the disclosure requirements of Rule 26, the court can prevent the expert from testifying unless the failure to disclose is harmless or substantially justified. Fed. R. Civ. P. 37(c)(1).

Trial in this case is now set for next week and the defendant still has not provided expert disclosures that comply fully with Rule 26. The defendant has presented no compelling justifications for the lack of compliance. The defendant has had ample notice of the expert witness disclosure requirements via the plaintiff's requests for the expert's trial and deposition lists, the questioning on these topics at the expert's deposition several months ago, the present motion *in limine*, and the Federal Rules themselves. Under the present circumstances, the defendant has not demonstrated that the failure to make the required disclosures is harmless or substantially justified. Accordingly, the Court will exclude the testimony of Dr. Gordon for failure to provide the disclosures required by Rule 26.[8]

---

[8] The plaintiff also argued that Dr. Gordon's testimony should be excluded because of his reliance on an inadequate methodology. While the Court need not reach this issue due to its decision above, the Court does note that the value of Dr. Gordon's testimony appears limited. The plaintiff asserts that Dr. Gordon's medical examination of the plaintiff, on January 12, 2010, relied upon "inferior quality and insufficient" wrist x-rays from March 11, 2009. Expert Excl. Mot. at 5. According to the plaintiff, subsequent wrist x-rays exist from November 23, 2009. *Id.* at 17. In his January 12, 2010 report, Dr. Gordon himself expressed interest in seeing additional reports and x-rays, stating: "If it is desired for me to discuss this [potential for degenerative changes in the wrist] in more detail, I would like the opportunity to see the actual operative report . . . as well as all of his pre- and postoperative x-rays that are available." *Id.*, Ex. 1, Report of Dr. Gordon, at 6. In a subsequent "Addendum," dated July 31, 2010, Dr. Gordon stated that he had reviewed the operative report and post-operative orthopedic clinic visits from the Washington Hospital Center, as well as radiographic reports from October 27, 2008, eight weeks after the fracture. *Id.*, Ex. 1, Addendum to Report of Dr. Gordon, at 7. He also indicated that the most current x-rays of the plaintiff's wrist that he has seen are the March 11, 2009 x-rays, and that he would "be happy to review" "all the pre and post-operative films." *Id.* According to the defendant, Dr. Gordon would be called as a witness "for a limited purpose, to testify concerning his physical examination and his opinions about permanency." Expert Excl. Opp. ¶ 10. Yet if one of the main purposes of Dr. Gordon's testimony is to provide evidence about the "permanency" of the plaintiff's injury, the Court questions how probative his testimony would be on that issue in light of the fact that he has not been provided with the plaintiff's most recent medical x-rays, despite their apparent availability.

**III. CONCLUSION**

For the foregoing reasons, plaintiff's motion *in limine* to exclude testimony of the conduct of the defendant's tenant is GRANTED in part and DENIED in part, and plaintiff's motion *in limine* to exclude testimony of the defense medical expert, Dr. Gordon, is GRANTED.

Date: April 18, 2011

                                                           /s/ *Beryl A. Howell*
                                                           BERYL A. HOWELL
                                                           United States District Judge