UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANDRE JENNINGS, <br><br> Plaintiff, <br><br> v. <br><br> BRENDA THOMPSON, <br><br> Defendant. | Civil Action No. 09-00790 (BAH) |

### MEMORANDUM OPINION

Plaintiff Andre Jennings sued the defendant Brenda Thompson for negligence, following the plaintiff's fall, on September 1, 2008, from a balcony at premises owned by the defendant. The Court initially held a jury trial in this case in April 2011, which resulted in a hung jury. The Court then held a second trial in this case in July 2011, which resulted in a verdict for the defendant. The plaintiff now moves for a new trial. For the reasons explained below, the motion is denied.

**I. BACKGROUND**

The defendant purchased a townhouse, on June 14, 2006, at 702 Ridge Road, SE, Washington, D.C. (the "premises"), which is where the incident that prompted this lawsuit occurred. Revised Joint Pre-Trial Statement ("JPS"), ECF No. 46, ¶¶ 2, 3, Pl. a. She leased the premises to her niece, Lolita Bobbitt, and Bobbitt's four children from about August 1, 2006 until March 2009, under a D.C. Housing Assistance Payment ("HAP") contract sponsored by the U.S. Department of Housing and Urban Development ("HUD"). *Id*. ¶ 3, Pl. b; Pl.'s Mot. In Limine to Exclude Reference to Alleged Tenant Misconduct, ECF No. 12 ("Tenant Excl. Mot.")

at 1-2.[1]

At the time of the incident at issue in this lawsuit, Bobbitt was the tenant at the premises and the plaintiff was her guest for a Labor Day cookout. Tenant Excl. Mot. at 2. On the afternoon of Monday, September 1, 2008, while at the premises, the plaintiff lowered a trash bag to the backyard below the second floor rear balcony. *Id.* As he did so, the balcony's metal railing broke free and plaintiff fell to the ground approximately ten feet below. *Id.* The plaintiff suffered multiple fractures to his left wrist that required surgery, and he claimed to be left with a permanent and painful injury that requires additional surgery. *Id.*; JPS ¶ 3, Pl. o.

Approximately one month before the incident, on August 5, 2008, a D.C. Building Inspector had inspected the premises and found, *inter alia*, that the handrail for the balcony at the rear of the premises was not secure. JPS ¶ 3, Pl. f. The plaintiff alleged that the defendant was negligent in allowing a dangerous condition to exist for an unreasonable period of time, without providing a warning of the danger, and that this negligence was the proximate cause of his fall. JPS ¶ 3, Pl. m-n. He further alleged that the fall caused a permanent and painful injury for which he has required treatment and will require future surgery, resulting in medical expenses estimated to be $56,917.61. *Id.* ¶ 3, Pl. o-q.

The defendant denied that she was negligent, although she admitted that she hired a contractor, Mitchell Samuel, to repair the property by September 3, 2008, when the property was scheduled for re-inspection. *Id.* ¶ 3, Def. c, h, x. The defendant claimed that the plaintiff voluntarily assumed the risk of injury, was contributorily negligent, and exaggerated his injury for which "the medical treatment was neither fair, reasonable, necessary, nor causally related." *Id.* ¶ 3, Def. k-m.

The first jury trial in this case began on April 25, 2011 and concluded on April 29, 2011.

---

[1] This motion has already been ruled upon and is cited herein solely for factual background.

The jury was unable to reach a verdict. Following the first trial, the parties attempted mediation, but did not reach a settlement. Accordingly, a second jury trial was held from July 25, 2011 to July 27, 2011.

The Court ruled on three motions in limine in connection with the trials in this case. In the first motion, the plaintiff moved to exclude any evidence of misconduct by the tenant, Lolita Bobbitt. The Court substantially granted the plaintiff's motion, excluding any reference to any destructive behavior or alcohol or drug use by the tenant, but the Court did not exclude evidence about the following topics: "the maintenance and condition of the balcony before the incident, the timing of when this area was identified as being damaged and needing repair, the persons who had control of the property, the defendant's prior efforts to inspect the property and communicate with the tenant about the condition of the property, and the obstacles presented by the tenant to such efforts, including any problems the defendant experienced in performing inspections or repairs." *Jennings v. Thompson*, No. 09-cv-790, 2011 WL 1460431, at *2 (D.D.C. Apr. 18, 2011) ("First Trial Motion in Limine Opinion"). The plaintiff also moved to exclude testimony from a defense expert witness and the Court granted that motion. *Id.* at *3-*5. Finally, the defendant moved to introduce evidence about an arrest and criminal conviction of the plaintiff, and the Court denied the defendant's motion and excluded this evidence to prevent prejudice to the plaintiff. *Jennings v. Thompson*, No. 09-cv-790, 2011 WL 2976936 (D.D.C. July 22, 2011) ("Second Trial Motion in Limine Opinion").

The jury heard testimony from numerous witnesses at the second trial, including a medical expert, a treating physician, and seven fact witnesses. Following the conclusion of the trial, the jury reached a verdict in favor of the defendant. *See* Verdict Form, ECF No. 50.

On August 3, 2011, the plaintiff filed a motion for a new trial. That motion, which the

defendant opposes, is now before the Court.

## II.     STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 59, "[t]he court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). "The decision to grant or deny such a motion lies within the sound discretion of the court." *Armenian Assembly of America, Inc. v. Cafesjian*, Nos. 07–1259 *et al.*, 2011 WL 1745155, at *5 (D.D.C. May 9, 2011) (quotation omitted).  To preserve the function of the jury, new trials should not be granted unless "a solid basis for doing so" exists.  *In re Lorazepam & Clorazepate Antitrust Litig.*, 467 F. Supp. 2d 74, 87 (D.D.C.2006) (quoting *Warren v. Thompson*, 224 F.R.D. 236, 239 (D.D.C.2004)).  "Further, such a motion should be granted only when the court is convinced that the jury verdict was a 'seriously erroneous result' and where denial of the motion will result in a 'clear miscarriage of justice.'" *Id*.  "Generally, a new trial may only be granted when a manifest error of law or fact is presented. Further, the standard for granting a new trial is not whether minor evidentiary errors were made." *Id*. (citation omitted).

## III.    DISCUSSION

The plaintiff contends that a new trial should be ordered because the jury verdict was against the weight of the evidence; and because the jury verdict was based on oversight, mistake, or consideration of an improper element, and was an impermissible nullification of the instructions of law.  Pl.'s Mot. for New Trial at 1. The plaintiff advances two primary arguments for a new trial: (1) that the plaintiff's evidence established a violation of certain Housing Quality Standards and that the jury's verdict was therefore against the weight of the evidence; and (2) that the jury must have improperly based its decision on the existence of "a highly distracting

interfamily disagreement."  Pl.'s Mem. in Supp. of Mot. for New Trial ("Pl.'s Mem.") at 9-14.  The Court addresses each of these contentions in turn.

### A. Evidence Regarding the Housing Quality Standards

The plaintiff's first argument for a new trial appears to turn on the alleged violation of Housing Quality Standards.  Since the premises at issue in this case were leased under a HUD-sponsored contract, the premises were subject to certain Housing Quality Standards.  As relevant here, these standards provided that the premises must have "secure handrails" for any balconies that are 30 inches or more above the ground.  Pl.'s Mem. at 9.  The plaintiff argues that "[v]ery simply, the weight of the evidence demonstrated that before the incident Defendant's guardrail did not satisfy the [Housing Quality Standards] and failed under ordinary use." *Id.* at 11.  The plaintiff contends that "[t]he competent evidence, which the jury evidently chose to ignore, demonstrated that the railing was not properly secured on the balcony at multiple points." *Id.* at 10-11.

Even assuming, *arguendo*, that the "the weight of the evidence demonstrated that before the incident Defendant's guardrail did not satisfy the [Housing Quality Standards]," that fact would not automatically require the jury to find negligence.  In accordance with the law and in accordance with the explicit agreement of both parties to this case, the Court instructed the jury that a violation of the Housing Quality Standards could evidence negligence but that a "violation by itself does not necessarily mean that the defendant was negligent."  Tr., July 26, 2011 (afternoon), at 55.  For example, the jury may have found that the defendant exercised an ordinary, reasonable level of care in her response to the violation and her attempts to remedy it.  Thus, there is no merit to the plaintiff's argument that a new trial is warranted simply because

"the weight of the evidence demonstrated that before the incident Defendant's guardrail did not satisfy the [Housing Quality Standards]."

### B. Evidence Regarding the "Interfamily Disagreement"

Next, the plaintiff argues that the jury's verdict was somehow tainted because the jury heard certain testimony relating to "a highly distracting interfamily agreement." Pl.'s Mem. at 12. Specifically, the plaintiff points to an episode during the testimony of Lolita Bobbitt, the tenant of the premises, who was called as a witness by the plaintiff during the second trial.[2] Ms. Bobbitt is married to the plaintiff's brother and is also the cousin of the defendant. Tr., July 25, 2011 (afternoon), at 102.[3] During Ms. Bobbitt's testimony, "she broke down, sobbing uncontrollably for a . . . prolonged period" after being asked on cross-examination whether her mother, Barbara Bobbitt, visited the premises. *Id.*; Tr., July 26, 2011 (morning), at 20-22. The plaintiff also cites a comment by Barbara Bobbitt, who was called to testify by the defendant in the second trial,[4] and who stated that she had not known Plaintiff Jennings had been injured until he "sued my niece for a million dollars." Pl.'s Mem. at 12.

The plaintiff hypothesizes that, as a result of Lolita Bobbitt's testimony and the conflicting testimony of her mother and her cousin, the defendant, "the jury clearly decided this case was not about the facts, but about the perception that Lolita Bobbitt was an outlier from her own family." Pl.'s Mem. at 13. The plaintiff contends that "Barbara Bobbitt and Defendant Thompson suggested that Plaintiff Jennings was associated with the family pariah. The message of Barbara Bobbitt and Defendant Thompson was that any unsuspecting user of Defendant's balcony who relied upon the guardrail and fell is beside the point. . . . The message that

---

[2] The plaintiff did not call Lolita Bobbitt to testify at the first trial in this matter.
[3] The parties have not requested a formal transcript from the court reporter. Accordingly, the Court's citations to the transcript are from the court reporter's rough draft of the proceedings.
[4] The defendant did not call Barbara Bobbitt to testify at the first trial in this matter.

prompted this jury to totally disregard the law and facts in this case was that Lolita Bobbitt was an ungrateful family deserter. Lolita, and vicariously the Plaintiff, had to be punished for being ungrateful to her cousin, Defendant Thompson . . . ." *Id.* The plaintiff concludes that "Plaintiff's probative evidence of the standard of care and deviation from that standard was swept away by the morality sideshow that took over the circus."[5] *Id.*

      The plaintiff offers this speculative theory about the jury's decision-making without any basis in evidence. The plaintiff concedes that the jury was properly instructed in the law governing this case. *See* Pl.'s Mem. at 13. Not a shred of evidence suggests that the jury's verdict for the defendant resulted from anything other than a proper consideration of the facts as presented by the parties and the law reflected in the Court's instructions. To the extent that the plaintiff now argues that Lolita Bobbitt's tearful outburst on the witness stand somehow tainted the jury, it was the plaintiff who called Ms. Bobbitt as a witness in this case. Further, the plaintiff never previously argued in the trial proceedings that this case should not be submitted to the jury, nor did the plaintiff argue that evidence of the familial ties between the parties in this case should be excluded from mention. Finally, and significantly, the Court fundamentally does not comprehend how any offhand testimonial references to the existence of the contentious family dynamics of the litigants in this case would tend to favor one party or the other.

      A motion for a new trial "should be granted only when the court is convinced that the jury verdict was a 'seriously erroneous result' and where denial of the motion will result in a 'clear miscarriage of justice.'" *In re Lorazepam & Clorazepate Antitrust Litig.*, 467 F. Supp. 2d at 87. "Generally, a new trial may only be granted when a manifest error of law or fact is presented." *Id.* The plaintiff is clearly unhappy with the outcome of this case, but a party's dissatisfaction is not a basis for a new trial. No manifest error of law or fact is implicated here

---

[5] The Court presumes that the metaphorical circus invoked here does not refer to the proceedings of this Court.

7

that would warrant a third trial in this case.

### III.   CONCLUSION

To uphold the important role of the jury in our system of justice, a jury's verdict ought not be disturbed lightly.  In this case, upon considering the evidence, the jury rendered its judgment, and the plaintiff has identified absolutely no sound reason for that judgment to be altered.  Over the course of two jury trials, the Court has devoted substantial public resources to the litigation of the plaintiff's complaint.  The record reflects that a full and fair trial was held in this matter.  The plaintiff has had ample opportunity to make his case in court and that case has now come to an end.  For the reasons explained above, the plaintiff's motion for a new trial is DENIED.

Date: September 22, 2011

/s/ *Beryl A. Howell*
BERYL A. HOWELL
United States District Judge